

1

2

3

4

5

6

7

8                             UNITED STATES DISTRICT COURT

9                             CENTRAL DISTRICT OF CALIFORNIA

10

11    FERNANDO HUERTA CHAVARIN,                  Case No. 2:25-cv-06852-HDV-MBK

12                    Plaintiff,

13    v.                                         **ORDER DENYING PLAINTIFF'S
                                                 MOTION TO REMAND AND FOR
14                                               ATTORNEY'S FEES [13]**

15    GENERAL MOTORS LLC, *et al.*

16                    Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

**I.    INTRODUCTION**

This lemon law action arises out of Plaintiff Fernando Huerta Chavarin's purchase of a 2024 Chevrolet Silverado 2500 from Diamond Chevrolet in San Bernardino.  Plaintiff alleges that his vehicle experienced multiple "electrical system defects" during the warranty period.

Before the Court is Plaintiff's Motion to Remand ("Motion") [Dkt. 13], which asserts that the removal of this case on July 25, 2025 was untimely.  Plaintiff maintains that removability was clear from the face of the Complaint filed in Los Angeles Superior Court [Dkt. 1-1], or, in the alternative, as early as June 16, 2025, when Plaintiff made initial disclosures including the sales contract and repair records.

For the reasons discussed below, the Court concludes that the initial Complaint did not provide sufficient grounds for triggering the 30-day removal clock under 28 U.S.C. § 1446(b)(1). The Complaint did not allege any facts to show that Plaintiff met the $50,000 jurisdictional requirement under the Magnuson-Moss Warranty Act ("MMWA") for federal question jurisdiction, and the bare allegation of Plaintiff's California residency was not enough to allege domicile or citizenship for diversity purposes.

Nor did the initial disclosures start the second 30-day removal window under section 1446(b)(3).  These records did not provide evidence of the vehicle's market value to calculate the damages required for jurisdiction under the MMWA, and they added little to no information relevant to an analysis of Plaintiff's citizenship—certainly far less than what was required to satisfy the "unequivocally clear and certain" removability standard applicable here.[1]

Because the removal was timely, the Motion is denied.

**II.    BACKGROUND**

Plaintiff purchased a new 2024 Chevrolet Silverado 2500 (the "Vehicle") in April 2024. Complaint ¶¶ 6, 9.  Plaintiff alleges the vehicle was defective and Defendant General Motors failed to fulfill its warranty obligations.  *Id.* ¶¶ 12, 14.

Plaintiff filed a Complaint in Los Angeles Superior Court on March 14, 2025, alleging claims

---

[1] Because the Motion to Remand is denied, Plaintiff's attendant motion for attorney's fees is also denied.

1    under the California Song-Beverly Consumer Warranty Act ("Song-Beverly") and the federal

2    MMWA.  *Id.* ¶¶ 8–44.  The Complaint identifies Plaintiff as a resident of Perris, California, but

3    provides no further information about domicile or citizenship.  *Id.* ¶ 2.  Defendant filed its Answer

4    on April 17, 2025.  Declaration of Michelle Yang in Support of Motion ("Yang Decl.") [Dkt. 13-1]

5    ¶ 6.

6            On June 16, 2025, Plaintiff's counsel served Defendant's counsel with its initial disclosures

7    pursuant to California Code of Civil Procedure section 871.26.  *See* Declaration of Casey Douglas in

8    Support of Defendant's Opposition ("Douglas Decl.") [Dkt. 18-1] ¶ 2, Ex. A ("Initial Disclosures")

9    [Dkt. 18-2]; Yang Decl. ¶ 7.  The initial disclosures identified the Vehicle's then-current mileage

10   (29,987 miles), its possessory owner (Plaintiff), and the location of the Vehicle (an address in Perris,

11   California).  Initial Disclosures at 2.  As part of those June 16 initial disclosures, Plaintiff's counsel

12   also provided a copy of the Vehicle's sales contract.  Yang Decl. ¶ 7, Ex. 2 ("Sales Contract") [Dkt.

13   13-3].  The Sales Contract (signed on April 28, 2024) identified Plaintiff's specific address in Perris,

14   California, and included Plaintiff's cell phone number—a number with a 951 area code located in

15   western Riverside County.  Sales Contract at 1, 5; *see Area Code 951*, Wikipedia,

16   http://en.wikipedia.org/wiki/Area_code_951 (last visited Oct. 29, 2025).  Finally, the initial

17   disclosures contained various repair records for the Vehicle.  Douglas Decl. ¶ 2.

18           Defendant removed the case on July 25, 2025, alleging that this Court has diversity

19   jurisdiction.  Notice of Removal at 3–6 [Dkt. 1].  Plaintiff filed the instant Motion on August 8,

20   2025.  After full briefing, see Opposition [Dkt. 18]; Reply [Dkt. 19], the Court heard oral argument

21   on September 18, 2025, and took the matter under submission.  [Dkt. 23].

22   **III.    LEGAL STANDARD**

23           Generally, a civil action filed in state court may properly be removed if there is federal

24   subject-matter jurisdiction at the time of removal, which exists when the suit arises under federal law

25   or when the parties are diverse and the amount in controversy is over $75,000.  *See* 28 U.S.C.

26   §§ 1441 (removal), 1331 (federal question jurisdiction), 1332 (diversity jurisdiction).

27           A notice of removal must be filed within 30 days of the initial pleading or summons if, using

28   a "reasonable amount of intelligence," the grounds for removability can be ascertained from such

3

1    pleading or summons.  28 U.S.C. § 1446(b)(1); *Kuxhausen v. BMW Fin. Servs. NA*, 707 F.3d 1136,

2    1139–40 (9th Cir. 2013).  Should the initial pleading not reveal grounds for removal, the notice of

3    removal must be filed within 30 days of the defendant receiving an "amended pleading, motion,

4    order ***or other paper***" which displays removability on its face.  28 U.S.C. § 1446(b)(3) (emphasis

5    added); *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005).  Moreover, the "other

6    paper" under this section must establish that removability is "unequivocally clear and certain."

7    *Dietrich v. Boeing Co.*, 14 F.4th 1089, 1094 (9th Cir. 2021) ("We believe the 'unequivocally clear

8    and certain' test hews to the text of § 1446(b)(3).").  These 30-day time limits, although procedural

9    in nature, are mandatory, and a successful challenge to removal based on a late notice requires

10   remand.  *Smith v. Mylan Inc.*, 761 F.3d 1042, 1045 (9th Cir. 2014).

11   **IV.    DISCUSSION**

12        Plaintiff makes several interdependent arguments in support of remand.  First, he argues that

13   removability was apparent from the initial Complaint based on federal question jurisdiction (given

14   the MMWA claim) and separately on the basis of diversity jurisdiction.  Motion at 1, 4–7.  In the

15   alternative, Plaintiff avers that the additional information provided on June 16, 2025 triggered the

16   second 30-day removal period, rendering Defendants' removal untimely.  Motion at 7; Reply at 3–4.

17   The Court addresses each removal window separately.

18        **A.    Removability At Initial Case Filing**

19        Plaintiff first contends that removal was apparent from the face of the Complaint given the

20   inclusion of the federal MMWA claim.  But the mere pleading of an MMWA cause of action is not

21   enough.  The MMWA is a federal statute and so can ground federal question jurisdiction but, under

22   its express terms, only if the amount in controversy is at least $50,000.  15 U.S.C. § 2310(d)(3)(B);

23   *Shoner v. Carrier Corp.*, 30 F.4th 1144, 1147 (9th Cir. 2022).[2]

---

24   [2] Although the Ninth Circuit has not definitively ruled on this issue, most courts have held in this

25   context that the $50,000 threshold under the MMWA has to be met exclusively by reference to
     remedies available under that Act and cannot be satisfied by including civil penalties available under

26   Song-Beverly.  *See Critney v. Nat'l City Ford, Inc.*, 255 F.Supp.2d 1146, 1147–49 (S.D. Cal. 2003)
     (holding that the MMWA threshold has to be met by aggregating MMWA claims, and *not* pendent

27   state law claims); *Misel v. Mazda Motor of Am., Inc.*, 420 F. App'x 272, 274 (4th Cir. 2011)
     (similar); *Scarlott v. Nissan N. Am., Inc.*, 771 F.3d 883, 887–88 (5th Cir. 2014) (similar); *Ansari v.

28

4

1    Plaintiff's Complaint failed to include any allegation that he is entitled to more than $50,000,

2    nor did it allege any other facts (*i.e.*, sales price, market value, etc.) that would have given Defendant

3    notice that his claims were worth more than the amount in controversy required under the MMWA.

4    Plaintiff's argument that the caption and Civil Case Cover Sheet invoked the state court's unlimited

5    jurisdiction, indicating that he was seeking damages above $35,000, Motion at 6, is similarly off the

6    mark—$35,000 does not meet the jurisdictional threshold.  So, too, is Plaintiff's contention that

7    Defendant should have known the market value of vehicles it sells.  Motion at 6–7.  Indeed, the

8    Ninth Circuit has explicitly held that a defendant is "not obligated to supply information which

9    [Plaintiff] ha[s] omitted," including guesses as to the price of cars the defendant manufactures.  *See*

10    *Kuxhausen*, 707 F.3d at 1141.

11    Plaintiff's diversity-related argument fails for the same reason.  Even considering the double

12    civil penalties available under the Song-Beverly Act, the initial Complaint failed to allege any facts

13    to show that the $75,000 (diversity-related) amount in controversy was met.

14    Plaintiff's diversity argument also fails because the allegations of Plaintiff's California

15    residency in the Complaint do not set forth Plaintiff's domicile or citizenship.  While it is certainly

16    true that, "[a]t minimum, a person's residence constitutes *some* evidence of domicile," *Adams v. W.*

17    *Marine Prods., Inc.*, 958 F.3d 1216, 1221 (9th Cir. 2020), "the diversity jurisdiction statute, 28

18    U.S.C. § 1332, speaks of citizenship, not of residency."  *Kanter v. Warner-Lambert Co.*, 265 F.3d

19    853, 857 (9th Cir. 2001).  "The natural person's state citizenship is then determined by her state of

20    domicile, not her state of residence.  A person's domicile is her permanent home, where she resides

21    with the intention to remain or to which she intends to return."  *Id.* (citation omitted).  "A person

22    residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of

23    that state."  *Id.* (citation omitted); *see also Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d 1223, 1227 (9th

24    Cir. 2019) ("[R]esidency is not equivalent to citizenship.").

25    Moreover, the Court concludes that, after *Harris v. Bankers Life and Cas. Co.*, 425 F.3d 689

26    (9th Cir. 2005), a plaintiff's mere allegation of residency in a complaint is not enough to trigger the

27

28    *Bella Auto. Grp., Inc.*, 145 F.3d 1270, 1272 (11th Cir. 1998) (similar).

30-day removal clock under section 1446(b)(1).  Although *Harris* is sometimes distinguished on the

ground that the plaintiff there was alleging the prior residency of a defendant (as opposed to the

plaintiff's own current residency), the Ninth Circuit was in fact quite clear and unequivocal in its

holding that the bare allegation of residency was insufficient to establish citizenship for purposes of

removability analysis under section 1446(b):

> We join with the other circuits that have adopted the same approach to indeterminate
> pleadings—the ground for removal must be revealed affirmatively in the initial
> pleading in order for the first thirty-day clock under § 1446(b) to begin.
>
> Applying this interpretation of § 1446(b), we quickly resolve that Bankers' removal
> of this case was timely.  The face of Harris' initial pleading did not affirmatively
> reveal information to trigger removal based on diversity jurisdiction because the
> initial pleading only stated Brown's 1972 residency, not his citizenship, and certainly
> not his citizenship as of the filing of the complaint.

*Harris*, 425 F.3d at 695.  Here, because the Complaint was silent on the key issue of Plaintiff's

domicile, the Court feels compelled by *Harris* to find that removability was not affirmatively

revealed at the time of the initial filing.[3]

---

[3] The Court acknowledges the split among various district courts in this circuit on the question of
whether a plaintiff's bare allegation of residency starts the removal clock.  *Compare Rubio v. CVS
Pharmacy, Inc.*, No. EDCV 25-106-KK-DTBx, 2025 WL 732837, at *2 (C.D. Cal. Mar. 7, 2025)
(removal clock under Section 1446 did not begin because "based on the FAC and settlement
demand, Defendants only knew Plaintiff was a resident of California"); *Brady v. Kohl's, Inc.*,
No. LA-CV-2203427-SPG-PD, 2022 WL 4104627, at *2 (C.D. Cal. Sept. 7, 2022) (inclusion of
California address in complaint not enough to ascertain basis for removal because "residency, alone,
without evidence of an intention to make a certain definite place one's permanent abode, does not
give rise to citizenship for the purposes of diversity jurisdiction" (internal citation omitted); *Crisp-
Stoot v. Wal-Mart Stores, Inc.*, No. CV-18-10694-PSG-PJWx, 2019 WL 1307735, at *2–4 (C.D.
Cal. Mar. 22, 2019) (finding responses to RFAs stating that plaintiff was a resident of California not
enough to start removal clock under section 1446); *Cioffi v. Solomon*, No. C-14-04139-RMW, 2014
WL 6679555, at *2 (N.D. Cal. Nov. 21, 2014) ("Plaintiff's initial complaint did not trigger the first
thirty-day window for removal because it only disclosed plaintiff's residency, not his citizenship.")
*with Crescencio v. Ford Motor Co*., No. CV 24-10946-MWF-BFMx, 2025 WL 1122096, at *2 (C.D.
Cal. Apr. 9, 2025) (holding that, in the absence of evidence to the contrary, "diversity of citizenship
was affirmatively revealed on the face of the Complaint" that only pleaded residence, not domicile);
*Hernandez v. Nissan N. Am., Inc.*, No. 8:25-CV-00276-FWS-ADS, 2025 WL 914758, at *3 (C.D.
Cal. Mar. 26, 2025) ("Defendant also contends removal was timely because diversity of citizenship
was not clear until Defendant performed an investigation confirming that Plaintiff's alleged
California residence was also Plaintiff's citizenship.  The Court is not persuaded."); *Pulcini v. Ford
Motor Co*., No. 2:24-CV-08846-JLS-AS, 2024 WL 4836469, at *3–4 (C.D. Cal. Nov. 19, 2024)

**B.  Removability on June 16**

Next, Plaintiff argues that, at the very latest, its June 16 disclosures qualified as an "other paper" under 28 U.S.C. § 1446(b)(3) sufficient to start the 30-day removal clock because they "unequivocally" showed that the $50,000/$75,000 thresholds had been exceeded.  Motion at 7; Reply at 3–4.  These disclosures included the Vehicle's sales contract, several repair orders, and a written disclosure of the current mileage.  Douglas Decl. ¶ 2; Initial Disclosures at 2.  The sales contract revealed that the cash price of the Vehicle and accessories was $72,815.00.  Sales Contract at 1–2.  It also showed that the total cash price (including collateral charges and sales tax, theft deterrent devices and surface protection products, a service contract, and a debt cancellation agreement or guaranteed asset protection financing) was $89,014.05; that Plaintiff made a down payment of $3,914.00; and that he financed $86,213.05, incurring financing charges of $33,754.70— for a total cost of $123,881.75.  *Id.*

As to the MMWA claim, the Court concludes that the initial disclosures did not meet the "unequivocally clear and certain" standard for removability under 28 U.S.C. § 1446(b)(3).  Although the sales contract contained additional information relevant to damages, the MMWA theory of damages most applicable here—California Commercial Code section 2713—provides for "diminished value" damages defined as the "difference between the market price at the time when the buyer learned of the breach and the contract price together with any incidental and consequential damages."  Cal. Comm. Code § 2713(1).  That calculation simply could not be made on the basis of the information contained in the initial disclosures because the Defendant had neither the market price at the time of the defect, nor full information about the current condition of the car, and did not have any other information relating to the incidental and consequential damages.  Indeed, even if it had applied a calculation using a Song-Beverly formula, the damages would have come to less than $50,000.  *See infra* note 4.

_____

(distinguishing *Harris* and finding that diversity jurisdiction existed based on allegations of residency, and removal clock therefore commenced upon receipt of the complaint).  However, while each district court must make its own determination based on the facts and the applicable law, this Court concludes that *Harris* controls on this record and finds that a mere allegation of residency is not enough to start the removal clock under section 1446(b).

1    As to the Song-Beverly claim—upon which the Plaintiff relies for his diversity jurisdiction

2    argument—the information provided on June 16 **did** give Defendant enough information to know

3    that the $75,000 amount in controversy had been met when considering the double civil penalties

4    available under that statute.[4]

5    But Plaintiff's argument on the timeliness of Defendant's diversity-based removal

6    nonetheless fails because the June 16 disclosures do not establish Plaintiff's domicile or citizenship

7    for purposes of making removability "unequivocally clear and certain" under section 1446(b)(3).

8    While the disclosures did for the first time reveal Plaintiff's exact address in Perris, California,

9    identified the repairs in California, and included a cell phone number that ties back to San

10

---

[4] Defendant argues that even Song-Beverly civil penalties were still indeterminate. It cavils that it cannot calculate the mileage offset because Plaintiff's initial disclosures did not certify that the repair records were complete or identify which presentation for repairs was the first relevant one. Opposition at 6, 17–18. But the initial disclosures did include the Vehicle's *current* mileage, *see* Initial Disclosures at 2, which is necessarily an upper bound on the mileage at the time of the first relevant repair. Using this mileage of 29,987, the amount of the mileage offset is calculated by dividing by 120,000 and then multiplying by the "actual price of the new motor vehicle paid or payable by the buyer, including any charges for transportation and manufacturer-installed options." *See* Cal. Civ. Code § 1793.2(d)(2)(C) (setting out mileage offset formula). It is not totally clear what line items should be included in the "actual price" in this formula, but even using the total sales price of $123,881.75—and thereby calculating the largest possible mileage offset, most favorable to Defendant's argument that the amount in controversy was not clearly met from the initial disclosures—the mileage offset is $30,957.02.

Similarly, Defendant argues that Plaintiff did not provide loan payment history until July 27, 2025, and thus Defendant could not calculate any additional statutory offsets, including the unpaid financing offset, until after this date. Opposition at 6, 18. But again, to use the number most favorable to Defendant that was obvious from Plaintiff's initial disclosures, the cash price of the Vehicle and accessories alone, without *any* financing charges, any third-party optional equipment or contracts, or any negative equity incorporated from prior vehicles, was $72,815.00.

Subtracting the upper bound mileage offset from the lower bound price paid or payable, Plaintiff's actual restitution damages under Song-Beverly were still *at least* $41,857.98. But Plaintiff is seeking, *inter alia*, civil penalties of twice this amount (so $83,715.96) on top of this. Complaint at 6; Cal. Civ. Code § 1794(c); *see also Ladd v. Mercedes-Benz USA, LLC*, No. 2:25-cv-02879-HDV-BFM, 2025 WL 2081572, at *3 (C.D. Cal. July 24, 2025) ("[W]hile far from a certainty, civil penalties are a key component of the relief sought in Song-Beverly actions, and they are undoubtedly part of what is at stake in the litigation."). Thus, even from the most conservative numbers on the face of Plaintiff's initial disclosures, the amount in controversy is easily met, and it was unequivocally clear and certain that the case was removable.

Bernardino County, *see* Initial Disclosures; Sales Contract, they offered almost nothing bearing on the central issue of Plaintiff's *intention to remain* in California. *See Kanter*, 265 F.3d at 857. Domiciliary analysis is a question of fact that turns on many factors, including "current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes." *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986). The disclosures offered almost nothing on these factors except for confirmation of residence, vehicle location, and, perhaps, the inference that Plaintiff has lived in California for over a year. That is not enough. The Ninth Circuit has emphasized that the "unequivocally clear and certain" standard under section 1446(b)(3) is a "high bar." *Blumberger v. Tilley*, 115 F.4th 1113, 1122 (9th Cir. 2024). The June 16 disclosures fail to meet this high standard for removability.[5]

## V.    CONCLUSION

For the foregoing reasons, Defendant's removal was timely and Plaintiff's Motion is ***denied***.

Dated:    October 29, 2025

_____
Hernán D. Vera
United States District Judge

---

[5] The Court has identified one recent case where the plaintiff's extensive time living in California in large part satisfied this standard. *See Rubio*, 2025 WL 732837, at *2 ("[I]t was not until Defendants received Plaintiff's responses to [defendant's interrogatories] on December 16, 2024, indicating, among other things, Plaintiff resided in Rancho Cucamonga, California since 2005, that it became 'unequivocally clear and certain' Plaintiff's citizenship was in California and Defendants had grounds for removal based on diversity jurisdiction."). Obviously, there is some point after which it is reasonable to infer (even under the high bar applicable here) that a party's lengthy period of residency equates to an intent to stay. But the facts here come nowhere close to the nearly 20 years of residency in *Rubio*.